# In the Matter of SOUTHLAND CORPORATION, Appellant, v NEW YORK STATE LIQUOR AUTHORITY, Respondent.

First Department, May 5, 1992

### APPEARANCES OF COUNSEL

*Martin I. Shelton* of counsel *(Mary Gail Gearns* and *Terri H. Budow* with him on the brief; *Shea & Gould,* attorneys), for appellant.

*Stephen D. Kalinsky* of counsel *(Adrian C. Hunte,* attorney), for respondent.

### OPINION OF THE COURT

CARRO, J.

Every so often, inflexible statutes enacted by the Legislature constrain administrative agencies and Judges to reach results that may be viewed as harsh and unjust. This case is an example.

The statute in question is Alcoholic Beverage Control Law § 126, which provides as here pertinent:

"The following are forbidden to traffic in alcoholic beverages:

"1. A person who has been convicted of a felony * * * unless subsequent to such conviction such person shall have received an executive pardon therefor removing this disability or a certificate of good conduct granted by the board of parole pursuant to the provisions of the executive law to remove the disability under this section because of such conviction * * *

"4. A copartnership or a corporation, unless each member of the partnership, or each of the principal officers and directors of the corporation * * * has not been convicted of any felony * * * or if so convicted has received, subsequent to such conviction, an executive pardon therefor removing this disability or a certificate of good conduct granted by the board of parole pursuant to the provisions of the executive law to remove the disability under this section because of such conviction".

Alcoholic Beverage Control Law § 3 provides that "[w]henever used in this chapter, unless the context requires otherwise * * * 22. 'Person' includes an individual, copartnership, corporation, society or joint stock company."

Petitioner-appellant, The Southland Corporation, is a Texas corporation with its principal place of business in Dallas, Texas. Southland claims to be the world's largest operator and franchisor of convenience stores, having a worldwide network of nearly 13,000 corporate, franchised and area licensed stores. The vast majority of Southland's retail outlets are

7-Eleven convenience stores, 216 of which are in New York State.

For several years and up to April 1, 1988, Southland owned and operated dairy divisions (the Dairies Group), including Velda Farms (Velda), a processor and distributor of dairy products in the State of Florida. On April 1, 1988, Southland sold all of its interest in its Dairies Group, including Velda, to another corporation. Consequently, Southland is no longer engaged in the dairy processing or distribution business, and has not been engaged in that business for almost four years. All of the dairy employees terminated their employment with Southland before or at the time that the Dairies Group was sold.

On February 16, 1988, the State of Florida commenced a civil antitrust action against Southland and 12 other dairies to recover damages incurred by 32 Florida school districts as a result of bid-rigging activities. In its complaint, Florida alleged that Velda and the other defendant dairies had agreed to coordinate bids submitted to certain local school districts so that each dairy would win the right to supply milk to some of the school districts. Southland was the first defendant to settle with Florida in the civil action, entering into a settlement agreement on April 14, 1988, two weeks after Southland's sale of Velda. The settlement agreement provided for dismissal of the civil action as against Southland in return for Southland's agreement to pay Florida $9,091,482, and to cooperate fully in Florida's prosecution of the action as against the remaining defendants.

In a June 20, 1988 press release announcing the settlement agreement, the Florida Attorney General, Robert A. Butterworth, publicly commended Southland officials for acting responsibly and promptly in addressing the charges against it, and credited Southland's cooperation with enabling Florida to obtain satisfactory settlements from the other dairies named in the civil action. Butterworth added: "The evidence has shown that Southland's top management had no knowledge of the bid-rigging activities by a relatively small number of Velda Farms employees".

Butterworth also, by letter dated June 17, 1988, certified to the Florida Department of Business Regulation, Division of Alcoholic Beverage and Tobacco, that after investigation he found:

"a. The identity of all persons involved in bidding on behalf of the Velda Farms Division is known to us [Florida];

"b. The bid-rigging activities of Southland's former Velda Farms Division in no way involved the 7-Eleven stores or their alcoholic beverages activities;

"c. None of the persons who [Florida] identified as being involved in bid-rigging on behalf of Velda performed any duties with respect to Southland's beverage licenses with the Division and none of those persons is currently employed by Southland or any of its related companies;

"d. Southland had an active antitrust compliance program and was opposed to this type of activity. None of Southland's corporate policies directly contributed to the commission of the bid-rigging by Velda employees;

"e. Southland has provided the valuable cooperation expected by [Florida] and is making restitution to the State and the School Boards as agreed; and

"f. No employees of Southland or any of its Divisions, other than present and former employees of its former Velda Farms Division, participated in, were involved in or had knowledge of the bid-rigging activities prior to the institution of [Florida's] investigation."

On or about March 1, 1990, almost two years after Southland's sale of Velda, the United States filed a criminal information against Southland based upon the same bid-rigging activities that were the subject of the civil action. Specifically, the information charged Southland with two counts of conspiring to restrain trade in violation of section 1 of the Sherman Anti-Trust Act (15 USC § 1).

On March 29, 1990, pursuant to a plea agreement dated February 26, 1990, Southland pleaded guilty to the two antitrust violations alleged in the information and agreed to pay the United States $2 million in penalties to settle each of the counts (for a total of $4 million). As described by the United States Department of Justice, Antitrust Division in a letter to the Special Deputy Attorney-General of the State of New York, this plea agreement "fully and satisfactorily resolves all matters arising out of the Division's investigation as they relate to Southland. The Antitrust Division believes that Southland has acted responsibly in agreeing to settle these matters. Southland has cooperated with the Antitrust Division by providing documentary information and encouraging employees of its former Velda Farms Division to cooperate with the investigation."

On February 23, 1990, before the entry of its conviction,

Southland made the first of a series of formal written disclosures to the New York State Liquor Authority concerning the criminal proceedings against it. Thereafter, in its normal course of business, Southland filed with the Authority three applications for off-premises beer/wine products licenses. The applications were consolidated for consideration.

On October 10, 1990, the Authority voted to deny each of the applications on the ground that, as a result of Southland's above-described conviction, section 126 (1) of the Alcoholic Beverage Control Law created a mandatory bar to the issuance of such licenses. The Authority's three opinions, rendered November 6, 1990, which are verbatim except for the location of the 7-Eleven stores identified therein, conclude that Southland's bid-rigging conviction constitutes a mandatory bar to the issuance of any licenses under Alcoholic Beverage Control Law § 126 (1). The opinions recite that: (1) Federal convictions "under 15 U.S.C. 1 are Federal felonies which are comparable to felonies in New York State under New York General Business Law, Sections 340 and 341"; (2) "Section 126.1 ABCL in pertinent part states that a person who has been convicted of a felony is forbidden to traffic in alcoholic beverages"; and (3) "Section 3.22 ABCL which defines 'person' includes a corporation as a 'person' ". As a result, concludes the Authority, "disapproval of [Southland's] application[s] * * * is mandated pursuant to the provisions of [the] Alcoholic Beverage Control Law".

Southland objected to certain other language in the November 6, 1990 opinions which indicated that the Authority had denied the applications in the exercise of its discretion, in addition to the prohibition set forth in Alcoholic Beverage Control Law § 126 (1). As a result of Southland's request for clarification, the Authority recalled its determinations of November 6, 1990, and redetermined that Southland's applications were denied nunc pro tunc. The Authority issued new opinions which deleted the language objected to by Southland, but were otherwise identical to the earlier opinions.

Southland then sought the opinion of the New York State Board of Parole as to whether Southland would be eligible to apply for a certificate of relief from disabilities pursuant to article 23 of the Correction Law, which the Authority in practice accepts as a substitute for the certificate of good conduct specified in Alcoholic Beverage Control Law § 126. By letter dated July 3, 1990, the Parole Board responded that "corporations are ineligible to apply for certificates of relief".

Southland thereafter made an application to the New York State Supreme Court (McQuillan, J.) for an order granting a certificate of relief from disabilities.

In a decision dated December 3, 1990, Justice McQuillan observed that section 700 (1) (a) of the Correction Law defines "eligible offender" as "a person who has been convicted of a crime or of an offense, but who has not been convicted more than once of a felony", and concluded that the term includes a corporate defendant. Nevertheless, Justice McQuillan denied Southland's application "solely because the predicate conviction was not in this court [see, Correction Law § 702 (1)]. The application must be submitted to the Board of Parole which is unequivocally empowered to hear and determine it in the manner prescribed in Correction Law Article 23."

Southland informed the Parole Board of Justice McQuillan's decision, and apparently requested that the Board reconsider its position (the letter is not reproduced in the record). By letter dated January 3, 1991, the Parole Board adhered to its position that it could not issue a certificate of relief from disabilities to a corporation, but emphasized that the issue was academic because in addition to the 1990 felony conviction, Southland had been convicted in 1984 of conspiracy to interfere with the IRS's collection function under 18 USC § 371.[1] Since both felonies were punishable by a term of imprisonment in excess of one year, they were cognizable as felonies under article 23 of the Correction Law (see, Correction Law § 700 [1] [b]). Consequently, Southland was not eligible to receive a certificate of relief from disabilities (see, Correction Law § 700 [1] [a]). Thereafter, in a decision dated March 1, 1991, Justice McQuillan granted Southland's motion for reconsideration but adhered to the court's prior determination that it had no authority to grant a certificate of relief from disabilities because a New York State court may only issue such a certificate "to an eligible offender for a conviction that occurred in such court" (Correction Law § 702 [1]).

On February 7, 1991, Southland commenced the instant action for a judgment pursuant to CPLR article 78 to annul the Authority's determinations which had denied Southland's applications for three off-premises beer and wine products licenses, and to direct the Authority to issue the licenses.

---

1. Since there was no comparable New York State felony, this conviction was not deemed a mandatory bar under Alcoholic Beverage Control Law § 126 (see, Rules of State Liquor Authority [9 NYCRR] § 53.1 [g]).

Southland contended that it was not a "person who has been convicted of a felony" under Alcoholic Beverage Control Law § 126 (1). The court rejected this argument, and dismissed the petition. This disposition was correct.

As previously noted, Alcoholic Beverage Control Law § 3 provides that "[w]henever used in this chapter, unless the context requires otherwise * * * 22. 'Person' includes an individual, copartnership, corporation, society or joint stock company." It is clear that the word "person" as used in Alcoholic Beverage Control Law § 126 (1) was not intended within the context of the statute to exclude from its license prohibition a corporation that has been convicted of a felony. First, the Legislature would have used the word "individual" if it had meant to exclude corporations, copartnerships, etc. But more analytically, Southland's interpretation of the statute would impose no mandatory license debarment of a corporation even if it had been convicted of a dozen felonies, with *mens rea,* so long as its principal officers and directors had not been individually convicted of a felony as set forth in Alcoholic Beverage Control Law § 126 (4). In dismissing Southland's petition, Justice Stecher found Southland's argument in this regard "unpersuasive", and we agree, although in our view it is an understatement. In fact, Southland's interpretation would leave a gaping hole in the statute, and makes no sense whatsoever.

We acknowledge that the result of applying the statute as written in the particular circumstances of this case does not satisfy a right sense of justice. In fact, it seems Draconian to forever debar this publicly held corporation from selling beer or wine for off-premises use under all the circumstances presented. New York stands alone and apart from the many States that have either taken no action against Southland based upon its felony conviction,[2] or have imposed probation, administrative penalties or fines as a result thereof.[3] However, the wisdom of the statute is not appropriately our concern. It is rather our duty to construe the statute as it is written, and we may not ignore its clear meaning in order to reach what we perceive to be a more just result. We accordingly conclude that the judgment of the Supreme Court, New York County

2. Arizona, Colorado, District of Columbia, Illinois, Kansas, Maryland, Michigan, Missouri, New Jersey, Oregon, Pennsylvania, Texas, Virginia, Washington and West Virginia.

3. California, Connecticut and New Mexico.

(Martin B. Stecher, J.), entered on or about August 19, 1991, dismissing Southland's CPLR article 78 petition, must be affirmed, with costs.

SULLIVAN, J. P., Ross and ASCH, JJ., concur.

Judgment of the Supreme Court, New York County, entered on or about August 19, 1991, dismissing Southland's CPLR article 78 petition, is affirmed, with costs.