In the Matter of GLADYS A. ENDRESON, Respondent, v NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, Appellant.

First Department, April 20, 1993

*Elizabeth Dvorkin* of counsel, New York City *(Francis F. Caputo* and *Jay C. Cooke* with her on the brief; *O. Peter Sherwood, Corporation Counsel* of New York City, attorney), for appellant.

*Stuart Salles,* New York City, for respondent.

OPINION OF THE COURT

CARRO, J.

Petitioner's late husband, William F. Endreson, was employed by the Triborough Bridge and Tunnel Authority since 1974, and as a member of the New York City Employees' Retirement System (NYCERS) designated petitioner to receive any death benefit payments. On October 6, 1988, the Authority granted Mr. Endreson a leave of absence without pay for medical reasons due to lung cancer. He remained on leave of absence until he died on December 19, 1989.

Since Mr. Endreson joined NYCERS between July 1, 1973 and June 30, 1976, he became a Tier 2 member governed by article 11 (§§ 440-451) of the Retirement and Social Security Law. At the time of joining a public retirement system, a Tier 2 member is required to irrevocably elect one of two death benefit plans set forth in section 448 of the Retirement and Social Security Law, both of which provide for payment of death benefits if the member dies "in service". Section 448 does, however, provide for a one-year grace period which will be applied, if certain conditions are met, so that the designated beneficiaries of employees who die within one year of their being placed on unpaid medical leave or its equivalent (e.g., when their accumulated sick leave is exhausted, as was the case herein) will be considered to have died "in service," and will receive death benefits. Thus, section 448 (e) (1) provides: "A member who dies while off the payroll shall be considered to be in service provided he (a) was on the payroll in such service and paid within a period of twelve months prior to his death, (b) had not been otherwise gainfully employed since he ceased to be on such payroll and (c) had credit

for one or more years of continuous service since he last entered or reentered the service of his employer."

During the period October 6, 1988 through December 19, 1989, Mr. Endreson received no regular salary payments, but he did receive (1) a $1,337 check on December 13, 1988 representing his annual "check in—check out" payment for 1988, (2) a $1,204.40 check on August 24, 1989 representing a 5% retroactive salary increase from January 1 to October 5, 1988, (3) a $66.58 check on September 22, 1989 representing a 5% retroactive increase in the check in—check out payment for 1988 and (4) a $213.52 check on December 1, 1989 representing the 1989 check in—check out payment prorated to cover a 53-day period when Mr. Endreson was on short-term disability from January 1 to February 22, 1989. After Mr. Endreson died, the petitioner applied for payment of his death benefit, but NYCERS refused payment in accordance with its longstanding policy not to pay a Tier 2 death benefit where the deceased member did not receive any regular pay for any payroll period within 12 months prior to his or her death.

Petitioner commenced the instant CPLR article 78 proceeding on December 12, 1990, arguing in support thereof that Mr. Endreson was in service when he died because he received the four checks identified *supra*. The IAS Court, by order and judgment (one paper) entered February 14, 1992, granted the petition and ordered the payment of the death benefit to the petitioner, reasoning that NYCERS' interpretation of section 448 (e) (1) of the Retirement and Social Security Law "is not supported by the literal language of the statute and more importantly the respondent's construction leads to an absurd and unexpected result by denying death benefits to the beneficiaries of deceased employees who received sporadic payroll checks during their terminal illnesses."

As here pertinent, judicial review of a determination of a body or officer as defined by CPLR 7802 (a) is limited to whether the determination was made "in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]). Thus a court may not substitute its judgment for that of an administrative agency when there is a rational basis for the agency's determination (*Matter of Tener v New York State Div. of Hous. & Community Renewal*, 159 AD2d 270). Moreover, "it is settled law that the interpretation given a statute by the agency charged with its enforcement will be respected

by the courts if not irrational or unreasonable" *(Matter of Fineway Supermarkets v State Liq. Auth.,* 48 NY2d 464, 468; *see also, Uniformed Firefighters Assn. v Beekman,* 52 NY2d 463, 472).

Retirement and Social Security Law § 448 (e) (1) provides that a member cannot be considered to have died "in service" unless he or she "(a) was on the payroll in such service and paid within a period of twelve months prior to his death." NYCERS has interpreted the phrase to mean that the member will be considered to have been "in service" if he or she was on the payroll and was paid for a full or partial payroll period during the one year preceding the member's death. Thus, according to NYCERS' construction, the statute does permit a death occurring after the member has stopped working to be considered a death "in service," but only if the member was on the payroll and paid a payroll check during the year preceding the member's death. We are persuaded that NYCERS' construction of the term "in service" to encompass the period within one year of payment of the member's last regular paycheck, is not irrational or unreasonable, and that it is in fact entirely consistent with the legislative intent as embodied in the statutory scheme.

NYCERS has applied the one-year limitation established by the Legislature to members, such as Mr. Endreson, who are on extended unpaid leaves of absence. Under NYCERS' interpretation, the member is given a one-year grace period during which he or she will be considered to be still "in service" although he or she has stopped working. After one year has passed, however, and the member has done no work and received no regular paychecks, the member will not be considered to be "in service" although the member has not yet put in for retirement.

This interpretation of the statute dovetails with the lenient practice of many City agencies regarding unpaid leaves of absence. Agencies routinely allow a member to remain indefinitely on an unpaid leave of absence without pay status, as happened with Mr. Endreson in the case at bar. This policy allows an employee to cope with what may be a terminal illness, without having the additional stress of having to put in papers to separate from the job and face the likelihood of never working again. Once the member has stopped working for over a year, however, it is not unreasonable to conclude that pursuant to section 448, the member is no longer considered to be "in service."

Any other interpretation of "in service" would be inconsistent with the practice of allowing indefinite leaves of absence without pay. If the legislatively established one-year grace period were to be applied to persons on such indefinite leaves in accordance with petitioner's urged construction, viz., extended for one year after *retroactive* wage payments are made to him or her, a death could be deemed to occur "in service" although the member had long since stopped working for the employer. NYCERS points out that such an additional and unintended obligation to pay death benefits would create a substantial burden on the retirement system because benefits would have to be paid to beneficiaries of employees who have had no connection with their former government employer for many years.

The IAS Court nevertheless considered Mr. Endreson's death to have occurred while he was "in service" because he received retroactive payments during the year preceding his death. It is undisputed that the retroactive payments were for payroll periods prior to October 6, 1988, when Mr. Endreson began his leave of absence. All employees who worked during the period covered by the retroactive collective bargaining agreement would receive those payments, including former employees who had retired or had passed away long before the retroactive payments were made. The statute, reasonably construed, does not provide that a former employee who had retired more than 12 months prior to his or her death should be deemed to be "in service" based on receipt of retroactive payments. Such payments merely signify recognition that the member was "in service" during the period covered by the newly negotiated collective bargaining agreement, not that the member is "in service" at the time such retroactive payments are made and for 12 months thereafter. The same analysis would reasonably apply to any Tier 2 employee on unpaid leave status for more than 12 months prior to his or her death.

Decedent did receive one payment for time during the calendar year preceding his death. The collective bargaining agreement required that he receive a lump-sum check in—check out payment of $213.52 for the calendar year 1989, covering the days he was on unpaid leave of absence status and received short-term disability payments from the union

welfare fund insurance carrier. It is NYCERS' position that this incidental payment, not constituting a regular weekly paycheck, does not constitute being paid "on the payroll" within the meaning of Retirement and Social Security Law § 448, and petitioner advances no persuasive argument for our finding NYCERS' construction of the statute irrational or unreasonable.

*Matter of Reichler v New York State Teachers' Retirement Sys.* (79 AD2d 268 [3d Dept 1981]), which arguably supports petitioner's position on this appeal, was in our view wrongly decided, with all due respect to that Court. Assuming, arguendo, that the *Reichler* opinion was correct in concluding that a death benefit would have been paid to the beneficiary of a Tier 1 or Tier 3 member in that petitioner's factual situation, it does not necessarily follow that the beneficiary of a Tier 2 member is ipso facto entitled to receive a death benefit, because each tier provides different benefits under different eligibility rules. For example, when the Legislature changed the death benefit available to the beneficiary of a NYCERS member from Tier 1 to Tier 2, it made substantial modifications in many aspects of the benefit. Tier 1 NYCERS death benefits were payable to beneficiaries of members who died "in city-service," a phrase interpreted to include leave without pay status, but the benefits were quite small for those who died before age 55. *(See,* Administrative Code of City of NY §§ 13-148, 13-151 [4] [six months' salary for members with 10 years service or less, others get one year's salary].)

When the Legislature enacted the Tier 2 plan, it reformed the death benefit in two important respects. First, it increased the benefit for beneficiaries of members who died before retirement age by allowing members to elect to receive three years' salary rather than limiting them to a maximum of one year (Retirement and Social Security Law § 448 [a]). Second, it changed the eligibility to establish a one year maximum limitation on how long a member could be off the payroll and unpaid, and still be eligible for a death benefit (Retirement and Social Security Law § 448 [e] [1]). The *Reichler* Court apparently ignored or was not advised of this tradeoff of an

increase in benefit for a cap on eligibility when it held that a Tier 2 member should have the same eligibility rules as a Tier 1 member.

In any event, *Reichler (supra)* is distinguishable, because if Mr. Endreson had been a Tier 3 or Tier 4 NYCERS member,* petitioner's claim for death benefits would be subject to a similar one-year cap on eligibility for members who die after a year of being off the payroll and unpaid, as would apply to a Tier 2 member (Retirement and Social Security Law § 501 [14] [eff until June 30, 1993]; § 606 [e] [1]). Those provisions would not allow payment of death benefits to beneficiaries of members who die after more than a year of an extended leave without pay.

Petitioner's claim for death benefits pursuant to Retirement and Social Security Law § 448 undoubtedly evokes great sympathy, but as we observed in *Matter of Southland Corp. v New York State Liq. Auth.* (181 AD2d 19, 25), where a statute compelled a result we viewed as harsh and unjust, "the wisdom of the statute is not appropriately our concern. It is rather our duty to construe the statute as it is written, and we may not ignore its clear meaning in order to reach what we perceive to be a more just result." The language of the statute here at issue, and the construction given it by the agency charged with its enforcement—which is neither irrational nor unreasonable, and thus entitled to our respect—require that the order and judgment (one paper) of the Supreme Court, New York County (Edith Miller, J.), entered February 14, 1992, which granted petitioner's CPLR article 78 petition and ordered NYCERS to pay petitioner death benefits pursuant to section 448 of the Retirement and Social Security Law, should be reversed, on the law, without costs, and petitioner's CPLR article 78 petition dismissed.

MURPHY, P. J., ROSENBERGER and ASCH, JJ., concur.

Order and judgment (one paper) of the Supreme Court, New

---

* The *Reichler* Court referred to Tier 3, but since that opinion was written, Tier 3 has been merged with Tier 4.

York County, entered February 14, 1992, which granted petitioner's CPLR article 78 petition and ordered NYCERS to pay petitioner death benefits pursuant to section 448 of the Retirement and Social Security Law, is reversed, on the law, without costs, and petitioner's CPLR article 78 petition dismissed.