OPINION OF THE COURT
Daniel P. Conviser, J.
Findings of Fact
On July 10, 2008, defendant Eastco Building Services pleaded guilty to one count of offering a false instrument for filing in *865 the first degree pursuant to Penal Law § 175.35, a class E felony. Eastco is a company which contracts to provide building maintenance services to government agencies and private companies. In a written plea agreement signed on the date of the plea, Eastco admitted that it had engaged in a collusive bid with a second company on a New York City Department of Education contract. As a part of its plea, Eastco agreed to pay $100,000 to the District Attorney’s office in a forfeiture stipulation. The owner and a high managerial agent of Eastco also entered misdemeanor pleas in separate actions in connection with the same criminal act.
On the date of sentencing, September 12, 2008, Eastco moved for the issuance of a certificate of relief from civil disabilities pursuant to article 23 of the Correction Law. Eastco’s attorney argued that Eastco had not previously been convicted of a crime, was statutorily eligible for the issuance of a certificate of relief and was a well established and reputable company which had engaged in only one illegal action, which was the subject of its plea. Eastco pointed out that upon the issuance of a certificate of relief, an entity considering entering into a contract with Eastco could still consider its instant conviction and might determine not to contract with Eastco because of that conviction. But Eastco argued that granting the certificate would allow Eastco to continue to enter into contracts it might otherwise be automatically barred from and allow Eastco’s employees to continue working. The People indicated that they had no position on whether or not Eastco’s application should be granted.
The court granted Eastco’s application on the sentencing date and issued a certificate of relief related to all civil disabilities except provisions related to weapons and related to employment as an accountant, insurance agent, bank officer, bank teller, stockbroker or securities broker. Following the issuance of the certificate of relief, the New York City Department of Probation (the Probation Department) contacted the court and asked to be heard on the question of whether a corporation (as opposed to an individual defendant) was statutorily eligible to receive a certificate of relief from civil disabilities. The Probation Department argued that the statute did not authorize the issuance of a certificate of relief for a corporate defendant and moved to vacate the certificate of relief for Eastco. The court subsequently heard oral argument on that question and later invited additional submissions from the parties on the matter.
For the reasons stated below, the motion of the Probation Department to vacate the certificate of relief granted to Eastco *866 in this matter is granted and such certificate of relief is hereby revoked.[1]
Conclusions of Law
Article 23 of the Correction Law provides a procedure whereby an “eligible offender” may be relieved from any statutory forfeiture, disability or bar to employment arising automatically from a criminal conviction. A court is authorized to issue a certificate of relief for an offender who is convicted in that court, if the sentence imposed is a revocable one or does not require a commitment to state prison. Such a certificate can eliminate all disabilities, forfeitures or bars to employment or may specify the specific bars to be eliminated. The statute also authorizes the State Parole Board to issue certificates of relief to eligible offenders who are released from prison. (Correction Law § 703.) That parole board authority does not apply to corporate defendants because corporations, obviously, cannot be incarcerated and then released from prison. Finally, the statute authorizes the Parole Board to issue a “certificate of good conduct,” an instrument similar to a certificate of relief, for individuals who have demonstrated “good conduct” for statutorily defined periods of time which vary depending upon the seriousness of the offender’s criminal conviction (Correction Law § 703-a).
The certificate of relief statute defines an “Eligible offender” who may receive a certificate of relief as “a person who has been convicted of a crime or of an offense, but who has not been convicted more than once of a felony.” (Correction Law § 700 [1] [a].)
The term “person” is not defined in the Correction Law. The term “person” is defined in the Penal Law as “a human being, and where appropriate, a public or private corporation, an unincorporated association, a partnership, a government or a governmental instrumentality.” (Penal Law § 10.00 [7].) It is pursuant to this definition, of course, that Eastco as a corporate entity was convicted in this case. It is notable that in defining the word “person” in other New York statutes, the Legislature *867 has often provided that the word “person” includes corporations or other business entities for all purposes, rather than only “where appropriate” as provided under the Penal Law.[2]
The sole question here is whether the word “person” in article 23 of the Correction Law includes only natural persons or also includes business entities, in this case, a corporation. As noted infra, this question has not been considered to any significant degree by courts in construing article 23 of the Correction Law. The question of whether “persons” include “corporations” under other constitutional or statutory provisions of law has been considered in a myriad of circumstances by courts over the centuries. As one commentator has noted: “Whether the word ‘person,’ as used in the constitution or in a statute, includes corporations in general depends on the purpose and spirit of the provision using the word.” (McQuillin, Law of Municipal Corporations § 2.22 [2008], citing Cook County v United States ex rel. Chandler, 538 US 119 [2003].) In the Cook County case, the United States Supreme Court held that the term “person” under the federal qui tarn statute included municipal corporations and held that when the qui tarn statute was enacted in 1863, the term “person” as used in the statute was commonly understood to include a corporation. The court’s early precedents in this regard continue to be vibrant in explaining why, under appropriate circumstances, a “person” can be properly construed as including a corporation:
“A corporation ‘is, in short, an artificial person, existing in contemplation of law, and endowed with certain powers and franchises which, though they must be exercised through the medium of its natural members, are yet considered as subsisting in the corporation itself, as distinctly as if it were a real personage.’ ” (Cook County v United States ex rel. Chandler, 583 US at 125, quoting Trustees of Dartmouth Coll, v Woodward, 4 Wheat [17 US] 518, 667 [1819, op of Story J.].)
The court is aware of one reported decision in which the question at issue here was directly addressed. In Matter of Southland Corp. v New York State Liq. Auth. (181 AD2d 19 [1st Dept 1992]) the Court upheld the trial court’s dismissal of a CPLR article 78 petition by a large operator and franchiser of convenience stores seeking to reverse a determination of the New York State Liquor Authority denying the appellant licenses for *868 off-premises beer and wine sales. The Liquor Authority’s determination was based on the fact that the bid-rigging conviction of the appellant corporation created a mandatory statutory bar to the issuance of such licenses under the Alcoholic Beverage Control Law. In reciting the history of the case, the court noted that the appellant had earlier applied to the New York State Parole Board for a certificate of relief but was told by the Board that corporations were not eligible for such certificates. It was then noted by the court:
“In a decision dated December 13, 1990, Justice Mc-Quillan observed that section 700 (1) (a) of the Correction Law defines ‘eligible offender’ as ‘a person who has been convicted of a crime or of an offense, but who has not been convicted more than once of a felony’, and concluded that the term includes a corporate defendant. Nevertheless, Justice McQuillan denied Southland’s application ‘solely because the predicate conviction was not in this court (see Correction Law § 702 [1]).’ ” (181 AD2d at 24.)[3]
The court is also aware of two other reported decisions in which corporate defendants applied for a certificate of relief and were denied, although there is no indication in those decisions that the issue being addressed here was ever considered. In Matter of C.P. Ward, Inc. (184 Misc 2d 57 [Monroe County Ct 2000]), the court denied an application for a certificate of relief from a corporate defendant because the defendant’s conviction occurred in federal court but did not address the question of whether a corporate defendant was eligible to receive a certificate of relief. In Matter of Waldbaum, Inc. (190 AD2d 810 [2d Dept 1993]), the Court held that it had no statutory authority to consider an appeal of the denial of a certificate of relief to a corporate defendant by the trial court, but did not indicate in its brief decision the basis on which the trial court had denied the appellant a certificate of relief. In reviewing over 100 additional reported decisions in which the granting or effect of a certificate of relief was considered by courts, the court did not come across any additional decisions in which a certificate of relief was sought or received by a corporation.
There is no question that in numerous contexts, the term “person” includes a corporation. Indeed the defendant was *869 convicted here, as noted, supra, under a Penal Law definition which makes corporate defendants criminally liable under appropriate circumstances. A review of the text of article 23, however, and a review of the statute’s legislative history indicates that the word “person” in article 23 was not intended to include corporate defendants.
The statute itself contains a number of provisions which seem to point to that conclusion, although none of those provisions, in the court’s view, are dispositive. The certificate of relief law is directed in large part to removing bars to employment. The statute in this regard provides that
“[a] certificate of relief from disabilities may be granted as provided in this article to relieve an eligible offender of any forfeiture or disability, or to remove any bar to his employment, automatically imposed by law by reason of his conviction of the crime or of the offense specified therein.” (Correction Law § 701 [1].)
The “relief’ granted by the statute is plainly directed at the criminal offender and inures to the offender’s benefit as a potential employee. Typically, an offender, through his or her attorney, applies to the court for a certificate of relief and if the certificate is granted, it is granted in the offender’s name. The statute does not provide direct relief, however, to employers who might be barred by law from hiring a criminal offender employee. Thus, employers under the statute would not appear to be authorized to apply to a court for certificates of relief for employees they might wish to hire.
With respect to employment bars, a corporation like Eastco in a colloquial sense might be said to be “employed” by a company or government agency it has contracted with. But the relationship between corporations like Eastco and their clients is not generally that of an employee and an employer — it is the relationships between two contracting entities, neither of which is employed by or is an employee of the other. Webster’s Unabridged Third New International Dictionary defines “employment,” among other definitions, as “work (as customary trade, craft, service or vocation) in which one’s labor or services are paid for by an employer.” (Webster’s Unabridged Third New International Dictionary 743 [Merriam-Webster Inc. 1993]). An “employee” is defined as “one employed by another usu[ally] in a position below the executive level and usu[ally] for wages.” (See Webster’s Unabridged Third New International *870 Dictionary 743 [Merriam-Webster Inc. 1993].) Of course it is true that to the extent Eastco might be barred from entering into a contract by virtue of its criminal conviction, its employees would also not be able to perform such contractual work. But under the statute, in the court’s view, Eastco is not “employed” or acting in the capacity of an “employee” by the entities it contracts with. The statute, in seeking to remove barriers to “employment” would thus appear not to cover a business entity like Eastco.
Other provisions of the statute point, in the court’s view, to the same conclusion. The statute directs that a certificate of relief shall not apply or be construed to apply to the right of “such person” (a person eligible for a certificate of relief) to hold a public office, a provision which obviously makes no sense when applied to a corporate defendant. (Correction Law § 701 [1].) A court issuing a certificate of relief must find that the certificate is “consistent with the rehabilitation of the eligible offender” (Correction Law § 702 [2] [b]), a formulation which clearly seems to contemplate a sentient being who is capable reforming his behavior through the incentives offered by a certificate of relief, rather than a statutorily created business organization whose business actions can obviously be modified but which does not in any sense act with the volition or pursuant to the behavioral incentives of a natural person. Thus a review of the plain language and context of the way in which the term “person” is used in article 23 indicates that the Legislature did not contemplate that the definition would extend to corporations. (See Jews for Jesus, Inc. v Jewish Community Relations Council of N.Y., Inc., 968 F2d 286, 293 [2d Cir 1992] [analyzing the manner in which the Legislature used the term “person” under the New York Civil Rights Law and concluding that the context indicated that the term did not include a corporation].)
The official certificate of relief form promulgated by the Office of Court Administration seems to contemplate that certificates of relief are issued only to natural persons. The form asks for the holder’s last name, first name and middle initial. The form further requires that the holder’s NYSID (New York State Identification) number be provided or, if the number is not known, requires that fingerprints be provided to the Division of Criminal Justice Services. The Department of Probation points out that corporate defendants do not have NYSID numbers. Where fingerprints are “unobtainable” from a defendant, the form requires information on the holder’s sex, race, height and *871 date of birth. That is, obviously, the official certificate of relief form promulgated by the Office of Court Administration does not seem to contemplate that a certificate of relief could be issued to a corporate defendant and indeed the form cannot be fully completed for a corporate defendant.
The legislative history of the statute, however, in the court’s view, provides even stronger evidence that the term “person” was not intended to include corporations. It is well-settled that “[w]here there is doubt as to the meaning of the language of a statute, various extrinsic matters throwing light on the legislative intent may be considered by the courts.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 120.) Article 23 of the Correction Law was added by chapter 654 of the Laws of 1966. In approving enactment of the legislation, Governor Nelson Rockefeller, in his approval message, noted:
“This bill will reduce the automatic rejection and community isolation that often accompany conviction of crimes, and will thus contribute to the complete rehabilitation of first offenders and their successful return to responsible lives in the community. It is an important step beyond the previous system of automatic, indirect sanctions following upon a conviction without regard to the merits of the individual involved.” (Governor’s Approval Mem, NY Senate Bill S4875 June 21, 1966, 1966 NY Legis Ann, at 349.)
These provisions obviously speak, in discussing “community isolation,” the return of persons to “responsible lives in the community” and “merits of the individual involved,” to human beings and not business entities (jd.). Memoranda submitted to the Governor prior to his signing of the 1966 legislation by the Judicial Conference of the State of New York and the Committee on Youth and Correction of the Community Service Society of New York similarly contain no indication that business entities were ever intended to be included in article 23.[4]
In 1972, article 23 was significantly expanded by broadening those offenders eligible to receive a certificate of relief from first offenders to offenders who had not been convicted more than once of a felony (thus allowing offenders with multiple misde *872 meanor convictions to obtain a certificate of relief). In a Governor’s program bill memorandum discussing the need for the legislation, the Governor’s office noted that New York State laws “are permeated with restrictions that deprive a criminal offender who has been allowed to remain in, or who has been returned to, the community of a wide variety of job opportunities.”[5] A letter from the State Department of Correctional Services, referring repeatedly to the entities covered by the bill as “individuals” asserted that the bill would be a “step forward in the humanization of the correction process.”[6]
The New York Urban Coalition, Inc. in recommending approval of the bill, noted that “[a]ll studies on the subject of the problems of adjustment of an ex-offender refer to the need for immediate employment.”[7] The Federation of Protestant Welfare Agencies noted that flexibility was needed in issuing certificates of relief to persons “coming out of prison” and that “job disabilities are one of the greatest stumbling blocks to developing economic alternatives to a life of crime.”[8]
Like the legislative history accompanying the 1966 enactment of article 23, the history surrounding the significant expansion of the statute in 1972 strongly suggests that the enactment of the statute was focused on natural persons — not business entities. Like the plain text of the statute itself, the legislative history of the 1966 enactment and 1972 revisions of article 23 clearly show that there is no evidence that business entities like corporations were ever contemplated to be included within the ambit of the statute.
Many of the legislative history sources cited here, of course, are of only limited value because they come not from the legislators who enacted and later amended article 23, but from outside interest groups who lobbied for passage of the legislation. Those sources, however, are useful in shedding light on the reasons article 23 was enacted. (See People v Mills, 11 NY3d 527 [2008] *873 [Letters to the Governor from the New York City Bar Association and New York State Defenders’ Association can be used to help construe the intent of the Legislature in enacting the Drug Law Reform Act of 2005 providing for the resentencing of class A-II felony drug offenders].)
There are certainly valid policy reasons for the Legislature to have included corporate defendants within the ambit of article 23. But there are likewise rational bases on which the Legislature could have enacted the statute to benefit natural persons but not corporations. An individual who is faced with a mandatory disability by virtue of a criminal conviction cannot do anything to lawfully change his or her identity in order to avoid the effects of such a restriction. Short of the issuance of a certificate of relief er a certificate of good conduct, the individual will be subject to any mandatory disability, bar or forfeiture they are otherwise subject to. The productive capacity of a business, however, can be shifted in numerous ways, through a merger, sale or replacement of the company’s principals, for example, which might avoid the effects of a statutory bar, disability or forfeiture on the company’s employees.
A corporation is also not subject to the same behavioral incentives as an individual person. An individual who cannot find a job because of a criminal conviction may be encouraged to commit additional crimes because they have no other viable options. Indeed, this was one of the main reasons for the enactment of article 23. A corporate defendant may well suffer economic hardship from the absence of a certificate of relief. Indeed, that economic hardship, and the hardship suffered by the employees of a corporation, may well be much more significant and far-reaching than the hardship suffered by an individual. But those economic hardships obviously will not create incentives for a corporate defendant to engage in a “life of crime” in the same way such incentives might operate to encourage criminality for a natural person. In short, there are certainly rational policy reasons for the Legislature to have legitimately focused on individuals in crafting article 23 and not intended the article to cover business entities.
For all of these reasons, the application of the Probation Department to revoke the certificate of relief granted to defendant Basteo is granted and that certificate of relief is hereby revoked. Such revocation shall be effective on the date written notice of such revocation, as provided by this decision and order, is received by the defendant. Upon receipt of this decision and *874 order, the defendant shall return the certificate of relief to the Court.[9]

. As the court indicated to the parties in this matter on multiple occasions, the original certificate of relief granted to Eastco on September 12, 2008 remained in effect during the pendency of these proceedings. That certificate of relief is vacated as of the date specified at the end of this decision and order but was validly in effect pursuant to the court’s earlier order prior to that date.

. See e.g. Agriculture and Markets Law § 191 (1) (f); Arts and Cultural Affairs Law § 11.01 (13); Business Corporation Law § 901 (b) (8).

. Defendant’s counsel in the instant matter noted in a written submission to the court that he had attempted to obtain a copy of Justice McQuillan’s decision but had not been able to do so because of the age of the decision. (See letter of Alfredo F. Mendez, counsel to Basteo, Jan. 23, 2009.)

. (See Letter from the Judicial Conference of State of New York to Robert R. Douglass concerning NY Senate Bill S4875, June 24, 1966, and Letter to Governor Nelson Rockefeller on NY Assembly Bill A6089 from Community Service Society Committee on Youth and Correction, June 13,1966, Bill Jacket, L 1966, ch 654.)

. Governor’s Program Bill Mem, NY Senate Bill S9768, 1972 NY Legis Ann, at 13.

. Letter from Manuel T. Murcia, Counsel to State Dept of Correctional Servs, to Michael Whiteman, Counsel to the Governor, concerning NY Senate Bill S9768, May 22, 1972, Bill Jacket, L 1972, ch 342, at 5.

. Letter from Eugene S. Callender, President of the New York Urban Coalition, to Governor Nelson Rockefeller on NY Senate Bill S9768, May 19, 1972, Bill Jacket, L 1972, ch 342, at 16.

. Letter from Lynn Hageman, Chairman, Youth & Community Servs Public Social Policy Comm, to Governor Nelson Rockefeller on NY Senate Bill S9768, May 23, 1972, Bill Jacket, L 1972, ch 342, at 22.

. The preceding effective date, notice and surrender provisions are the statutory procedures which must be followed when a temporary certifícate of relief is revoked by the court. (Correction Law § 704.) The certificate of relief in this case, as noted on the certificate, was a temporary one under the statute.